UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Tasha Fambo and
Marvia Carr,

                              Plaintiffs,

                          v.

Alterra Healthcare Corporation,

                              Defendant.
_____

**Hon. Hugh B. Scott**

08CV795S

**Decision
&
Order**

Before the Court are the following motions: the plaintiff's motion to compel discovery (Docket No. 24) and the defendant's cross-motion seeking an order of protection relating to discovery sought by the plaintiffs (Docket No. 27).

**Background**

The plaintiffs, Tasha Fambo ("Fambo") and Marvia Carr ("Carr") [referred to collectively as "the plaintiffs"] commenced this action against Alterra Healthcare Corporation d/b/a Alterra Wynwood of Kenmore (referred to collectively as "Alterra") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981 and §290 of the New York State Executive Law. The plaintiffs allege that they were discriminated against by Alterra based upon their race.

1

Carr and Fambo were employed at Wynwood as home health aides, starting in 1999 and 2003 respectively. Both were hired by Wynwood's then-Resident Director Mary Jane Kalowski. (Docket No. 1 at ¶¶ 12-13). The plaintiffs allege that after Kalowski was replaced by Jeannine Montelone as Resident Director, Alterra began subjecting the plaintiffs "to disparate treatment because of their race and color." (Docket No. 1 at ¶ 15). The plaintiffs assert that on January 10, 2006, they reported the discriminatory abuse of a 98-year-old African American resident referred to as "Mrs. Hayes." According to the plaintiffs, Mrs. Hayes was the only African American resident at Wynwood at that time. It appears that Wynwood residents are provided with pendants to be work around their necks and can be used to summon attendant employees when needed. (Docket No. 1 at ¶ 19). Fambo asserts that she discovered that the pendant worn Mrs. Hayes was a "makeshift decoy pendant fashioned from a foot scrubber." (Docket No. 1 at ¶ 20). Fambo reported the incident to Carr, her team leader, who in turn reported the incident to the "RN case manager." (Docket No. 1 at ¶¶ 21). The plaintiffs assert that Montelone investigated the report, but focused more on the activities of Fambo and Carr because they were African American. (Docket No. 1 at ¶ 23). Montelone, allegedly motivated by Fambo's race, concluded that Fambo fabricated the report of the fake pendant. (Docket No. 1 at ¶ 25). On January 19, 2006, another resident, Mrs. R. Abbott, was discovered dead by her husband. Fambo alleges that she had just completed her shift ending at 7:00 a.m. on January 19, 2006, but responded to the situation while off duty. (Docket No. 1 at ¶¶ 30-33). She asserts that the Caucasian on duty at that time did not respond to the situation until advised to do so by Fambo and Carr. (Docket No. 1 at ¶¶ 35). On January 20, 2006, Fambo and Carr were suspended based upon an alleged failure to provide proper care to Mrs. R. Abbott. Fambo was allegedly terminated because she failed to document care she provided to Mrs. R. Abbott on the Activities of Daily Living sheets ("ADLs"). (Docket No. 1 at ¶ 39). Carr was allegedly terminated on the grounds that "she charted resident cares that

2

she did not personally provide and did not ensure that co-workers properly documented the ADL sheets on the January 19, 2006, 11:00 p.m. to 7:00 a.m. shift." (Docket No. 1 at ¶ 45). The plaintiffs contend that it was "common" for home health aides to be behind in filling out ADL sheets and that it was established practice for team leaders to chart resident care based upon reports from the communications book and nurses notes. (Docket No. 1 at ¶¶43, 46). The plaintiffs contend that they were treated differently than Caucasian employees and were terminated because they are African American and complained about the mistreatment of an African American resident. (Docket No. 1 at ¶ 51).

**Motions to Compel and for a Protective Order**

The plaintiff seeks to compel the defendant to respond to interrogatories and document requests seeking the "HHA Communications Books for all shifts for the period December 1, 2005 to February 1, 2006, including Buffalo not limited to the HHA Communication books covering the entire month of January 2006." (Docket No. 24-2 at page 2). It is undisputed that the documents requested by the plaintiffs contain confidential medical information relating to various residents at Wynwood who are not parties to this action. The plaintiffs assert that they desire the HHA Communications books to evaluate the non-discriminatory reasons alleged by the defendants for the dismissal of the plaintiffs and to "evaluate issues included but not limited to disparity of treatment, knowledge of events, and timing of disciplinary actions." (Docket No. 29 at ¶16).

The defendant objects to the request on the ground that is seeks protected information from non-parties. Further, the defendant objects to the request on the ground that it seeks information relating to all residents of the facilities and not just those involved in the incidents identified in the complaint. (Docket No. 27-2 at ¶¶ 7-9). The defendant has proposed that it

produce, pursuant to a Court Order, the HHA Communications book documents relating to Mrs. Hayes and Mrs. Abbott from their arrival at the facility to January of 2006. (Docket No. 27-2 at ¶ 10). Because of the confidential medical information involved, the defendant also request that any disclosure be subject to additional restrictions including the redaction of the names (and other identifying information); that the documents not be attached to any e-filed documents, nor quoted in the text of any papers electronically filed or otherwise be made public; limiting the use of the information only in connection with the instant litigation; that any depositions of witnesses on the subject of the documents be considered confidential; and that all documents provided in discovery be destroyed at the close of the instant litigation. (Docket No. 27-2 at ¶ 12-13).

The plaintiffs are entitled to discovery which may support their claims that they have been discriminated against based upon their race. The plaintiffs contend that their entries in the HHA Communication books were similar in character to the entries made by other Wynwood employees. The plaintiffs further contend that the criticism of their entries in the HHA Communications books, as grounds for their termination, was pretextual. Thus, it is the nature and character of the entries, and not the actual treatment provided to Wnywood residents which is relevant to the plaintiffs' claims. The redaction of information identifying particular residents should not preclude an analysis regarding the nature and character of the entries made by the plaintiffs and other staff members. Also, due to the confidential nature of the requested information, the Court directs that the HHA Communications books be disclosed subject to the following:

1. The defendant shall produce the HHA Communications books for all residents for a 6-month period prior to January 19, 2006. The names and social security numbers of all Wynwood residents referred to in the documents shall be redacted.

2. The documents produced pursuant to this Order are deemed confidential and shall be marked as such. These documents are produced for attorneys-eyes only and shall not be disclosed to the plaintiffs or other individuals. These documents shall

not be attached to any e-filed documents, nor quoted in the text of any papers electronically filed or otherwise be made public. The documents may only be used in connection with the instant litigation. Any depositions of witnesses on the subject of the documents shall be considered confidential. All such documents provided in discovery be destroyed at the close of the instant litigation.

The motion to compel and the motion for a protective order are each granted in part and denied in part, consistent with the above.

**Modification of the Scheduling Order**

The plaintiff also seeks a modification of the scheduling order. The defendant does not oppose this request. The following dates shall apply:

1. This case has been referred automatically to the Alternative Dispute Resolution (ADR) program. The parties shall continue mediation efforts. All dates relating to mediation included in the original scheduling order remain in place.

2. All discovery in this case shall conclude on **April 30, 2010**. All motions to compel shall be due at least **30 days prior** to that discovery cutoff date.

3. The plaintiff shall identify experts and provide written reports in compliance with Rule 26(a)(2), as amended in 1993, no later than **March 1, 2010**; the defendant shall identify experts and provide written reports in compliance with Rule 26(a)(2), as amended in 1993, no later than **April 15, 2010** See Rule 26 of the Local Rules for the Western District of New York as amended effective December 1, 1994. All expert discovery shall be completed on or before **April 30, 2010.**

4. In the event settlement is not effectuated through mediation, dispositive motions, if any, shall be filed no later than **July 30, 2010**.

5. In the event no dispositive motions are filed, pretrial statements in strict compliance with Local Rule 16.1(I) shall be filed and served no later than **August 31, 2010**.

6. No extension of the above cutoff dates will be granted except upon written joint motion, filed prior to the cutoff date, showing good cause for the extension.

7. A final pretrial conference pursuant to Fed. R. Civ. P. Rule 16(d) and Local Rule 16.1(j) will be held on **September 22, 2010 at 9:00 a.m.** with Judge Skretny.

8. Trial is set to commence on **November 30, 2010 at 9:30 a.m.** before Judge Skretny.

Counsel's attention is directed to Fed. R. Civ. P. Rule 16(f) calling for sanctions in the event of failure to comply with any direction of this Court.

So Ordered.

                                                                   /s/ Hugh B. Scott
                                                          United States Magistrate Judge
                                                          Western District of New York

Buffalo, New York
January 22, 2010